# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| STANLEY CONRAD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO.: 1:17-CV-112-TLS |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Stanley Conrad seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits and Supplemental Security Income. The Plaintiff argues that the Commissioner wrongfully denied his benefits and erred by: (1) assigning the Plaintiff a limitation to simple tasks but concluding that the Plaintiff can perform occupations that have a general education development (GED) reasoning level of three, (2) improperly discounting the Plaintiff's psychological consultative exam, and (3) improperly interpreting the Plaintiff's physician's statement that the Plaintiff is free to drive as indicative of the Plaintiff's health status.

## BACKGROUND

On June 27, 2013, the Plaintiff filed a Title II application for a period of disability insurance benefits, alleging disability beginning on March 14, 2012. (R. at 17, ECF No. 12.) The Plaintiff's application was denied initially and upon reconsideration. (*Id.*) An administrative law judge (ALJ) held a hearing on the Plaintiff's application on June 10, 2015. (*Id.*) The Plaintiff, as well as Robert Barkhuas, Ph.D., a vocational expert, appeared and testified at the hearing. (*Id.*)

On July 14, 2015, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because he was not disabled under the relevant provisions of the Social Security Act. (*Id.*) The Appeals Council denied the Plaintiff's request to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (*Id.*)

On March 22, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ determined that the Plaintiff had engaged in SGA in 2013. (R. at 18.) However, after that date, the Plaintiff satisfied the step one inquiry because the ALJ found that there was a continuous 12 month period during which the Plaintiff did not engage in SGA. (R. at 19.) In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the Plaintiff had multiple severe impairments,

including a history of seizures, a history of right parietal infarct with cognitive residuals, left shoulder AC joint degenerative changes, degenerative disc disease, hypertension, a history of Achilles tendonitis, obesity, and depression because they significantly limit his ability to perform basic work activities. (*Id.*) The ALJ found that the Plaintiff's sleep apnea, allergies, and migraines do not constitute severe impairments. Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rises to this level, he earns a presumption of disability "without considering his age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairments, either singly or in combination, do not meet or equal any of the listings in Appendix 1, (R. at 20), and that the Plaintiff has the RFC to perform sedentary work, as defined by § 404.1567(a) and 416.967(a), except that he is limited to:

> the occasional use of hand controls; unlimited use of foot controls; reach on the right occasionally, but never on the left; unlimited reach [of] all others; handle occasionally, right and left; fingering frequently; unlimited feel; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; never balance, kneel, crouch, or crawl; occasionally stoop; never unprotected heights, moving mechanical parts, or operating motor vehicles; unlimited weather, humidity, and wetness; unlimited odors, fumes, and pulmonary irritants; never extreme cold or heat; unlimited vibration and very loud noise; limited to performing simple, routine, and repetitive tasks; use of judgment is limited to simple, work-related decisions;

3

and occasionally respond appropriately to supervision, co-workers, and work-related situations.

(R. at 22.)

At the final step of the evaluation, the ALJ determined that the Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (R. at 33.) The ALJ determined that the Plaintiff can work as a surveillance system monitor and call out operator. (*Id.*)

The Plaintiff subsequently sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz*, 559 F.3d at 739. A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and resolve the case accordingly. *Id.* at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th

Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the Court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal to this Court, the Plaintiff presents numerous faults with the ALJ's decision. First, the Plaintiff argues that the ALJ erred by improperly discounting the opinion of Dr. Alan Stage, Ph.D.

The Plaintiff contends that Dr. Stage determined the Plaintiff suffered from "markedly limited *auditory* memory," and an "outsized *auditory* memory problem" and the ALJ did not adequately assess this part of Dr. Stage's opinion. (Pl. Br. 10–11, ECF No. 21 (emphasis in original).) The Court does not find language indicating an extreme auditory problem present in

5

Dr. Stage's assessment. Dr. Stage examined the Plaintiff on October 18, 2013, and, after administering the Wechsler Memory Scale, determined that the Plaintiff's memory "varied greatly by individual task and domain." (R. at 536.) In general, Dr. Stage concluded that the Plaintiff's "auditory memory" fell in the "borderline range," which fell below most individuals his age, (R. at 535–36); his visual memory fell within the "average" range, (R. at 535, 537); and his visual working memory, immediate memory, and delayed memory fell within the "low average" range. (R. at 535, 537.) Accordingly, the Court finds that the ALJ accurately concluded that testing "confirmed [the Plaintiff's] memory [was] in the borderline to low average range" (R. at 31.), which encompasses the Plaintiff's auditory memory.

Though the Plaintiff spends the majority of his argument regarding the ALJ's analysis of Dr. Stage's opinion on the Plaintiff's auditory memory issue, the Plaintiff also briefly argues (Pl. Br. 8) that the ALJ erred when discounting Dr. Stage's diagnostic conclusions that the Plaintiff suffers from anxiety disorder and major depressive disorder. (*See* R. at 539.) The ALJ discounted Dr. Stage's opinion and concluded that the Plaintiff's "allegations of depression are not fully supported" (R. at 31), because: (1) "the claimant has neither sought nor received any formal mental health treatment during the period, and . . . antidepressant medication has not been prescribed by any treating source," (R. at 30); (2) the Plaintiff denied feeling depressed both to his family physician, Dr. Nussbaum, on September 11, 2013, one month prior to his assessment with Dr. Stage, and during a primary care visit on January 6, 2015, (*id.*); and (3) the other state agency consultants opined that the Plaintiff had severe impairments, but that he could still perform simple work with superficial workplace interactions. (R. 31 (citing R. at 101, 113, 128, 143).) The Court has examined each of these reasons in turn and finds them insufficient.

First, the ALJ explained that he discounted Dr. Stage's opinion, including his finding of a Global Assessment of Functioning score of 50[1], because:

> it does not appear that any treating source recommended mental health treatment. Once would assume that if "significant" anxiety and/or depression had been observed, the claimant would have been referred for treatment by one of this treating sources. Some weight has been given to the results of memory testing, but no weight has been given to the level of symptoms or limitations suggested by the GAF score assigned.

(R. at 31). However, the Seventh Circuit has held that an "ALJ's implication that [the plaintiff] would have been referred to . . . treatment . . . if []he really had been disabled . . . 'impermissibly substitutes the ALJ's personal observations for the considered judgment of medical professionals.'" *Pratt v. Colvin*, No. 12 C 8983, 2014 WL 1612857, at *7 (N.D. Ill. Apr. 16, 2014) (citing *Schomas v. Colvin,* 732 F.3d 702, 709 (7th Cir. 2013)); *cf Rogers v. Barnhart*, 446 F. Supp. 2d 828, 857–58 (N.D. Ill. 2006) (holding that though "the ALJ did note that [the physician's] treating notes never mentioned depression and she did not refer plaintiff for psychological counseling or treatment to prescribe medication for depression," the ALJ's "conclusion was based on far more than this.")

Second, the ALJ pointed out that there was "inconsistent reporting in terms of anxiety and depression" (R. at 31), because "during . . . [a] primary care visit on January 6, 2015, the claimant specifically denied depression (R. at 30 (citing R. at 839–42)), and a "review of symptoms during the claimant's new patient visit with Dr. Nussbaum on September 11, 2013, indicates that the claimant denied depression, anxiety, and panic attacks" one month prior to Dr. Stage's evaluation. (R. at 30 (citing R. at 548–54).)

---

[1] The ALJ noted that a GAF score of 50 is typically indicative of serious symptoms or functional limitations.

7

"Th[e] deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that [the courts] scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 783 (N.D. Ill. 2017) (citing *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014)). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

The Court has reviewed the record and finds no mention in either the treatment record dated January 6, 2015, or the in record dated September 11, 2013, indicating that the claimant specifically denied depression. In the January 6, 2015, treatment record, under "Review of Symptoms" the healthcare provider listed "psychiatric: not present – depression." (R. at 840.) Similarly, the September 11, 2013 record, under "Review of Symptoms" states "Psychiatric: Not present – Depression, Anxiety, Panic Attacks, Suicidal Ideation and Suicidal Planning." (R. at 551.) It is unclear to the Court why the ALJ found these notations to reflect the Plaintiff's own self-report of his symptoms, instead of the healthcare provider's opinion of the Plaintiff's symptoms.

In any case, the notes regarding the absence of symptoms of depression are located within the treatment records of the Plaintiff's primary care healthcare team, and there is no indication that Dr. Nussbaum or any member of the team specializes in mental healthcare; in contrast, Dr. Stage does specialize in psychology. Though Dr. Nussbaum may be the Plaintiff's treating physician, and generally, the opinion of a treating physician is accorded controlling weight, the opinion of a specialist about medical issues related to his or her area of specialty is

8

entitled to greater weight than the opinion of a source who is not a specialist. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). The ALJ thus must weigh the opinions of Dr. Nussbaum and Dr. Stage and, if he finds the records from the Plaintiff's primary healthcare team to be more compelling than those of Dr. Stage, despite Dr. Stage's area of expertise in mental healthcare, the ALJ must sufficiently detail his rationale. In his decision, the ALJ has not done so.

Finally, the ALJ discounted Dr. Stage's opinion because he found that the other state agency consultants opined that the Plaintiff had severe mental impairments, but that the Plaintiff could nevertheless still perform simple work with superficial workplace interactions. (R. at 31 (citing R. at 101, 113, 128, 143).)

In *Rogers v. Barnhart*, the court upheld the ALJ's decision to discount the plaintiff's allegation of depression, holding that the ALJ noted that treatment notes never mentioned depression, the plaintiff's physician did not refer plaintiff for psychological counseling or treatment, and the state agency examiner "made specific note of [the plaintiff's] emotional state and the absence of any indication of depression, and the [plaintiff's other] mental health professionals . . . concluded that [she] was not depressed." 446 F. Supp. 2d at 857–58. Here, unlike in *Rogers*, the other state agency consultants did not affirmatively make "specific note" of the absence of depression or otherwise conclude that the Plaintiff is not depressed. On the contrary, the state agency examiners in this case noted that the Plaintiff suffered, to a severe degree, from organic mental disorders and affective disorders. (R. at 101, 113, 128, 143.) Though the consultants also opined that the plaintiff is capable of performing simple tasks and can have superficial workplace interactions—and the ALJ found this to be evidence that the Plaintiff's "allegations of depression are not fully supported"—the consultants' opinions regarding the Plaintiff's social functioning does not constitute a finding that the Plaintiff is not

9

depressed. Instead, it is an opinion regarding the Plaintiff's functional limitations despite the Plaintiff's mental health issues, which may include depression. *See, e.g.*, *Harless v. Astrue*, No. 1:10-CV-361, 2011 WL 4036104, at *7 (N.D. Ind. Sept. 12, 2011) (holding that the plaintiff suffered from depression but that he was able to engage in brief and superficial contact); *Owen v. Colvin*, No. 12 C 8016, 2013 WL 4506882, at *2 (N.D. Ill. Aug. 22, 2013) (holding that the plaintiff could have brief and superficial interpersonal interactions, but she is otherwise limited by her anxiety and depression). Therefore, a finding that the Plaintiff can still function, in a limited capacity, in society does not mean that the Plaintiff's "allegations of depression are not fully supported," as the ALJ held. (R. at 31.) Accordingly, remand is in order.

Because the Court is remanding on this point, the Court need not consider the remainder of the parties' arguments.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this case to the ALJ for further proceedings consistent with this Opinion and Order.

SO ORDERED on May 10, 2018.

                                                            s/ Theresa L. Springmann
                                                            CHIEF JUDGE THERESA L. SPRINGMANN
                                                            UNITED STATES DISTRICT COURT